Javier L. Merino
The Dann Law Firm
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EDUN MOHAMED**, | Case No.: |
| Plaintiff, | Judge: |
| vs. | **COMPLAINT FOR DAMAGES** |
| **NATIONSTAR MORTGAGE, LLC D/B/A MR. COOPER; FAY SERVICING, LLC,** | **JURY DEMAND ENDORSED HEREON** |
| Defendants. | |

Plaintiff Edun Mohamed ("Plaintiff" or "Mohamed"), by and through counsel, for his Complaint against Defendant Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Nationstar") and Fay Servicing, LLC ("Fay") states:

## WHY MOHAMED IS FILING THIS COMPLAINT

1. This Complaint concerns Nationstar's material errors in intentionally breaching a loan modification and Fay's perpetuation of and failure to correct that mistake. Nationstar's unconscionable actions in breaching Mohamed's loan modification agreement forced him to needlessly continue defending a foreclosure lawsuit and caused him ascertainable financial loss and emotional distress. Fay's subsequent actions did not meet the minimal standards of conduct for mortgage servicers under the Regulation X. Both Nationstar and Fay caused Mohamed

substantial financial damage, further damage to his credit standing, humiliation, suffering, stress, and emotional distress, and forced Mohamed to incur otherwise unnecessary attorneys' fees (in addition to the costs and fees related to bringing this action), all of which will be described more fully, *infra*.

## PARTIES, JURISDICTION, AND VENUE

2. Mohamed is the owner of real property, located at and commonly known as 164-44 108th Ave., Jamaica, NY 11433 (the "Home").

3. Mohamed has maintained the Home as his primary, principal residence at all times relevant to this Complaint.

4. Nationstar is the former servicer of a note executed by Mohamed (the "Note") and of a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively, the "Loan"). A copy of the Loan is attached as **Composite Exhibit 1**.

5. Mohamed obtained the Loan for household purposes, namely the purchase of the Home that he occupied as his primary residence.

6. Nationstar serviced the Loan on behalf of this Federal Housing Administration insured loan at all times relevant to this matter until approximately November 1, 2017, when the servicing of the Loan transferred to Fay.

7. Fay serviced the Loan from November 1, 2017 until June 19, 2018.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action, in part, arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

9. This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367

10. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* of Regulation X.

11. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Mohamed maintains the Home and resides within this District, Nationstar and Fay each do business within this District, and the conduct giving rise to the causes of action in this Complaint, *infra*, occurred primarily within this District.

## SUMMARY OF CLAIMS

12. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

13. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

14. The Loan is a "federally related mortgage loan" as that term is defined by 12 C.F.R. § 1024.2(b) because it is insured by the Federal Housing Administration.

15. Nationstar and Fay are each subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4).

16. Neither Nationstar nor Fay are "qualified lenders", as defined in 12 C.F.R. § 617.700.

17. Mohamed asserts claims for relief against each Nationstar and Fay for breaches of the specific rules under Regulation X as set forth, *infra*.

18. Mohamed has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such actions provide for remedies including actual damages, costs, statutory damages, and attorneys' fees.

19. Mohamed also asserts common law claims against Nationstar for breach of contract.

20. Additionally, Mohamed asserts statutory claims for violations of the General Business Law § 349 (the "GBL") against Nationstar and Fay.

## FACTUAL BACKGROUND

21. During 2017, Mohamed experienced income-related hardships and applied for a loan modification through Nationstar.

22. On or around February 13, 2017, Nationstar sent Mohamed correspondence advising him he was approved for a HAMP FHA loan modification trial period plan (the "TPP"). A copy of the TPP is attached as ***Exhibit 2***.

23. The TPP advised "in order to accept the trial plan, you must return the executed trial plan to us by 3/1/2017. Additionally, you must make the first Trial Period Plan payment by the due date (payment must be received by the last day of the month in which it is due)." *See Exhibit 2*.

24. The TPP provided for three trial period payments of $1,507.02 due by the end of March 2017, April 2017, and May 2017, respectively. *Id.*

25. The TPP further provided:

> Once you have returned the signed document and successfully made each of the monthly Trial Period Plan payments by the due dates, we will send you the final modification agreement which is required to be signed and returned to Nationstar. We will also sign this modification agreement and your account will be permanently modified in accordance with the terms of the modification agreement.

4

26. Accordingly, Mohamed returned the executed TPP to Nationstar on or before 3/1/2017. Mohamed also timely remitted the first, second, and third trial period payments. Copies of the canceled checks for such payments are attached as **Composite Exhibit 3**.

27. Following Mohamed's satisfaction of his obligations under the TPP, on or about May 9, 2017, Nationstar sent Mohamed a final loan modification agreement (the "Final Modification").

28. On or about May 23, 2017, Mohamed fully executed the Final Modification and returned the same to Nationstar. A copy of the executed Modification is attached as **Exhibit 4**.

29. In full compliance with and in satisfaction of his obligations under the terms of the Final Modification, Mohamed remitted the payments due for the months of June 2017, July 2017, August 2017, September 2017, and October 2017. *See Exhibit 3*.

30. Despite Mohamed's compliance with and satisfaction of his obligations under the terms of the Final Modification, Nationstar sent Mohamed correspondence dated August 17, 2017 advising Mohamed he was approved to enter into a Trial Period Plan under the HAMP FHA Program but requiring monthly payments of $1,654.70, an increase of over $150.00 per month. A copy of the TPP is attached as **Exhibit 5**.

31. Nationstar then sent Mohamed correspondence dated October 19, 2017 advising him his HAMP FHA request was denied because:

> We have withdrawn your request for a modification for one of the following reasons. This is because either: after being offered a Trial Period Plan or Modification Agreement you either did not make the 1st payment in your trial plan, or did not return the final modification agreement timely, or after initially asking to be considered for a modification you withdrew that request.

A copy of the denial notice is attached as **Exhibit 6**.

32. As outlined, *supra*, Mohamed fully complied with the TPP and timely returned the fully executed Final Modification. Further, Mohamed never advised Nationstar that he was withdrawing his request for either the TPP or Final Modification.

**MOHAMED'S ATTEMPTS TO HAVE NATIONSTAR AND FAY CORRECT ERRORS**

33. On or about November 21, 2017, Mohamed, through counsel, sent Nationstar correspondence captioned "**ERROR RESOLUTION NOTICE UNDER 12 C.F.R. 1024.35**" ("NOE #1"). A copy of NOE #1 is attached as ***Exhibit 7***.

34. Through NOE #1, Mohamed advised Nationstar that they committed the following errors:

   a. Nationstar caused Mohamed to default on the Final Modification by not accepting and applying his payments;

   b. Nationstar failed to honor the terms from the Final Modification and improperly attempted to force a new modification with higher payment terms upon Mohamed; and

   c. Nationstar failed to advise Fay of the contractual Final Modification between the parties.

35. Mohamed sent NOE #1 to the mailing address Nationstar designated for receipt of notices of error, which is and was at all times relevant: Mr. Cooper, Attn: Customer Relations, PO Box 619098, Dallas, TX 75261-9741 (the "Nationstar Designated Address").

36. Nationstar received NOE #1 at the Nationstar Designated Address.

37. Through correspondence dated November 30, 2017, Nationstar responded to NOE #1 (the "Nationstar NOE Response"). A copy of the Response is attached as ***Exhibit 8***.

6

38. Through the Nationstar NOE Response, Nationstar refused to honor the Final Modification and advised:

> Your client was approved for Trial Period Plans (TPP) under....HAMP, according to the letters dated February 13, 2017 and August 17, 2017...The first TPP was effective with the trial payment of $1,507.02 due March 1, 2017. We received three TPP payments on February 24, 2017, March 17, 2017, and April 19, 2017...Our records indicate this TPP was created in error and was closed on August 10, 2017…
>
> During our investigation, we were unable to identify the error in creating a Trial Period Plan in error, and correct it on August 10, 2017.

*See Exhibit 8*.

39. On or about November 21, 2017, Mohamed, through counsel, sent Fay correspondence captioned "**ERROR RESOLUTION NOTICE UNDER 12 C.F.R. 1024.35**" ("NOE #2"). A copy of NOE #2 is attached as *Exhibit 9*.

40. Through NOE #2, Mohamed advised Fay:

   a. Fay's failure to obtain Mohamed's loan documentation including the executed Final Modification resulted in Mohamed not being able to make monthly mortgage payments; and

   b. Fay was required to honor the Final Modification agreement as the agreement was executed and all modification payments were made.

*See Exhibit 9*.

41. Mohamed sent NOE #2 to the mailing address Fay designated for receipt of notices of error, which is: Fay Servicing, LLC, 901 S. 2nd Street, Suite 201, Springfield, IL 62704 (the "Fay Designated Address").

42. Fay received NOE #2 at the Fay Designated Address.

43. Through correspondence dated January 15, 2018, Fay responded to NOE #2 (the "Fay NOE Response"). A copy of the Response is attached as ***Exhibit 10***.

44. Through the Fay NOE Response, Fay refused to correct the servicing error in the Final Modification breached and advised Mohamed:

> [T]he enclosed letter from Mr. Cooper dated November 30, 2017 states that on October 18, 2017, a Forbearance Plan was denied for Mr. Mohamed due to excessive obligations in relation to income and that HAMP FHA was denied as Mr. Mohamed did not accept the offer.

*See Exhibit 10*.

## MOHAMED IS FORCED TO NEEDLESSLY DEFEND A FORECLOSURE

45. On or about September 19, 2016, Nationstar filed a foreclosure complaint against Mohamed in the Queens County Supreme Court, captioned *Nationstar Mortgage, LLC v. Edun Mohamed, Et Al.* and assigned Index No. 711209/2016 (the "Foreclosure Matter"). A copy of the docket sheet is attached as ***Exhibit 11***.

46. On or about June 1, 2017, the Queens County Supreme Court conducted a settlement conference, and Nationstar's attorneys advised Special Referee Tracy Catapano Fox that a permanent loan modification was forthcoming that should resolve the foreclosure action. Accordingly, the matter was marked settled.

47. However, on June 22, 2018, Nationstar filed a Motion for Order to Restore the Foreclosure Matter. A copy of the Affidavit in support of the Motion is attached as ***Exhibit 12***.

48. Through the Motion, Nationstar requested the Foreclosure Matter be restored and referred back to the Residential Foreclosure Part. *See Exhibit 12*.

49. On July 26, 2018, the court granted Nationstar's Motion and restored the Foreclosure Matter (the "Restoration Order"). A copy of the Order is attached as ***Exhibit 13***.

50. After the foreclosure matter was restored, Edun incurred attorneys' fees in attending settlement and status conferences with his counsel on September 5, 2018, January 29, 2019; and March 19, 2019. *See Exhibit 11*.

51. Ultimately, Nationstar and Fay refused to honor the Modification Agreement.

52. On or about June 19, 2018, the servicing of the loan transferred to Carrington Mortgage Services, LLC ("Carrington").

53. Mohamed continued incurring attorneys' fees in attempting to resolve the Final Modification through Carrington.

## IMPACT AND DAMAGE TO MOHAMED

54. Nationstar's actions in failing to honor the Final Modification terms forced Mohamed to continue needlessly defending the Foreclosure Matter and caused Mohamed to incur additional attorneys' fees and costs in defending the foreclosure and otherwise attempting to obtain information and correct errors.

55. Nationstar directly and proximately caused the following damages to Mohamed:

    a. He suffered the lost opportunity of the Final Modification;

    b. He had to retain and pay legal counsel nearly $7,000 to vigorously contest the Foreclosure Matter and submit multiple NOE's to Nationstar and Fay and pay postage costs for the mailing of the NOE's; and

    c. He suffered extreme emotional distress directly and proximately caused by Nationstar's actions in failing to implement the Final Modification.

56. Fay's actions in failing to correct the Final Modification servicing error and implement the Final Modification caused Mohamed to incur additional attorneys' fees and costs to attempt to defend the Foreclosure Matter, obtain information and correct errors.

57. Fay directly and proximately caused the following damages to Mohamed:

    a. He suffered the lost opportunity of the Final Modification;

    b. He had to retain and pay legal counsel nearly $7,000 to vigorously contest the Foreclosure Matter and submit multiple NOE's to Nationstar and Fay and pay postage costs for the mailing of the NOE's; and

    c. He suffered extreme emotional distress directly and proximately caused by Nationstar's actions in failing to implement the Final Modification.

58. Throughout the period of when Nationstar and Fay were servicing the Loan, Mohamed simply wanted to benefit of the permanent loan modification to which he was entitled under Federal Housing Administration regulation and resume making timely, proper payments on the Loan in order to begin to rehabilitate his credit, and most importantly, retain the Home.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY NATIONSTAR**

59. Nationstar's actions are part of a pattern and practice of behavior in violation of Mohamed's rights and in abdication and contravention of Nationstar's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

60. At the time of the filing of this Complaint, Nationstar has had more than Seven Thousand Three Hundred Fifty-One (7,351) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

61. At the time of the filing of this Complaint, Fay has had more than Three Hundred Three (303) consumer complaints lodged against it nationally, specifically concerning the issue

identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www .consumerfinance.gov/complaint database/).

62. Mohamed has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Nationstar against other borrowers. In particular, Mohamed has reviewed the ten (10) consumer complaints attached hereto and identified as ***Composite Exhibit 14***. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Nationstar has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

63. Mohamed has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Fay against other borrowers. In particular, Mohamed has reviewed the ten (10) consumer complaints attached hereto and identified as ***Composite Exhibit 15***. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Fay has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

**COUNT ONE: AGAINST NATIONSTAR**
**VIOLATION OF 12 C.F.R. § 1024.35(e)**

**(Failure to perform a reasonable investigation into and correct asserted errors by the NOE)**

64. Mohamed restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

65. 12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that

includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

66. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

67. Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards the borrower's mortgage loan.

68. 12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

>  (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
>  (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

69. NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 7*.

70. Mohamed sent NOE #1 to Nationstar at the Nationstar Designated Address.

71. Nationstar received the NOE #1 at the Nationstar Designated Address.

72. Through NOE #1, Mohamed advised Nationstar that it made errors in not honoring the Final Modification. *See Exhibit 7*.

73. To date, Nationstar has failed to correct or perform a reasonable investigation into the errors asserted by and through NOE #1 as evidenced by Nationstar's recognition of Mohamed's compliance with the Final Modification yet also their refusal to honor Mohamed's Final Modification. *See Exhibit 8*.

74. Nationstar's failures to correct or properly investigate the errors alleged in NOE #1 constitute clear, separate, and distinct violations of 12 C.F.R. § 1024.35(e).

75. Nationstar's actions caused Mohamed to suffer actual damages, including, but not limited to, the attorneys' fees incurred for the time in preparing NOE #2, the postage cost for mailing NOE #2, the attorneys' fees incurred in reviewing the Responses to NOE #1 and NOE #2, the attorneys' fees incurred in attempting to resolve the error through Carrington, and emotional distress.

76. Nationstar's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Mohamed's rights.

77. As a result of Nationstar's actions, Nationstar is liable to Mohamed for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: AGAINST NATIONSTAR
## BREACH OF CONTRACT

78. Mohamed restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

79. The Final Modification is a contract between Mohamed and Nationstar. *See Exhibit 7t*.

13

80. Nationstar breached the Final Modification by refusing to implement the loan modification and unilaterally determining it was sent in error.

81. Mohamed dutifully performed his obligations pursuant to the Final Modification by timely remitting the executed Modification and timely remitting the Final Modification payments for the months of June 2017, July 2017, August 2017, September 2017, and October 2017. *See Exhibit 3*.

82. Nationstar has breached the contract in bad faith. This is evidenced by the fact that Nationstar accepted five (5) post-Modification payments from Mohamed then unilaterally breached the agreement after claiming it was sent in error.

83. As pled, *supra*, Mohamed was harmed by Nationstar's breaches of the Final Modification by refusing to honor the terms of the agreement, taking away an opportunity for Mohamed to obtain a permanent loan modification.

84. Mohamed was forced to retain counsel to aid in enforcing the agreement reached under the Final Modification, including incurring attorneys' fees and postage costs in preparing and mailing the NOEs and defending the Foreclosure Matter.

85. In addition, Nationstar's intentional and outrageous conduct caused Mohamed to suffer extreme emotional distress driven by the fear that he might be forced to leave the Home, which resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

86. Mohamed's extreme emotional distress is a foreseeable result of Nationstar's breaches of the Final Modification.

87. As a result of Nationstar's actions, Nationstar is liable to Mohamed for actual damages, attorneys' fees, and costs.

## COUNT THREE: AGAINST NATIONSTAR
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW 349

88. Mohamed restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

89. Mohamed is a "person" within the meaning of GBL § 349(h).

90. GBL § 349(a) makes unlawful deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York State.

91. As referenced above, *supra*, Nationstar violated GBL § 349 by using deceptive acts and practices in the conduct of its business. Specifically, Nationstar extended the TPP agreement to Mohamed, and after Mohamed complied with the TPP, extended the Final Modification Agreement. It was only after Mohamed timely executed and made five (5) payments under the Final Modification did Nationstar unilaterally refuse to honor the Final Modification.

92. Nationstar's misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of deception.

93. The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the servicing of Mohamed's Loan.

94. As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Mohamed suffered damages in violation of GBL § 349(h).

95. As a result of its actions, Nationstar is liable for actual damages, statutory damages, costs, and attorneys' fees pursuant to GBL § 349(a) to Mohamed.

## COUNT FOUR: AGAINST FAY
## VIOLATION OF 12 C.F.R. § 1024.35(e)

96. Mohamed restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

97. 12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

98. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

99. Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards the borrower's mortgage loan.

100. 12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

    (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

    (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

101. NOE #2 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 9*.

102. Mohamed sent NOE #2 to Fay at the Fay Designated Address.

103. Fay received NOE #2 at the Fay Designated Address.

104. Through NOE #2, Mohamed advised Fay that it made errors in not honoring the Final Modification. *See Exhibit 9*.

105. To date, Fay has failed to correct or perform a reasonable investigation into the errors asserted by and through NOE #2 as evidenced by Fay's failure to even reference the Final Modification through their NOE Response. *See Exhibit 10*.

106. Fay's failures to correct or properly investigate the errors alleged in NOE #1 constitute clear, separate, and distinct violations of 12 C.F.R. § 1024.35(e).

107. Fay's actions caused Mohamed to suffer actual damages, including, but not limited to, the attorneys' fees incurred for the time in defending the Foreclosure Matter, the attorneys' fees incurred in reviewing the Response to NOE #2, the attorneys' fees incurred in attempting to resolve the error through Carrington and emotional distress.

108. Fay's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Mohamed's rights.

109. As a result of Fay's actions, Fay is liable to Mohamed for actual damages, statutory damages, costs, and attorneys' fees

## COUNT FIVE: AGAINST FAY
## VIOLATION OF GENERAL BUSINESS LAW 349

110. Mohamed restates and incorporates all of his statements and allegations contained in paragraphs 1 through 63, in their entirety, as if fully rewritten herein.

111. Mohamed is a "person" within the meaning of GBL § 349(h).

112. GBL § 349(a) makes unlawful deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York State.

113. As referenced above, *supra*, Fay violated GBL § 349 by using deceptive acts and practices in the conduct of its business. Specifically, Fay refused to correct the breached Final Modification servicing error and otherwise chose to continue prosecuting the Foreclosure Matter against Mohamed.

114. Fay's actions possess the tendency or capacity to mislead and create the likelihood of deception.

115. The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the servicing of Mohamed's Loan.

116. As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Mohamed suffered damages in violation of GBL § 349(h).

117. As a result of its actions, Fay is liable for actual damages, statutory damages, costs, and attorneys' fees pursuant to GBL § 349(a) to Mohamed.

## CONCLUSION

118. Nationstar's intentional breach of the Final Modification is consistent with Nationstar's continuing poor mortgage servicing practices and constitute deceptive conduct under GBL 349. Nationstar's thereafter refusal to correct its mistake constitutes non-compliance with the RESPA regulations contained in 12 C.F.R. § 1024.35.

119. Fay's failures to reasonably investigate asserted errors are consistent with Fay's continuing poor mortgage servicing practices and non-compliance with the RESPA regulations contained in 12 C.F.R. § 1024.35 and its common law and statutory duties to Mohamed.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Edun Mohamed prays that this Court enter its order granting judgment against Defendant Nationstar Mortgage Services, LLC, d/b/a/ Mr. Cooper, as follows:

    A.    For actual damages as to each of Counts One through Three;

    B.    For statutory damages of up to Two Thousand Dollars ($2,000.00) for each such RESPA violation as to Count One;

    C.    For attorneys' fees and costs as to Counts One and Three;

    D.    Such other relief which this Court may deem appropriate.

**WHEREFORE,** Plaintiff Edun Mohamed prays that this Court enter its order granting judgment against Fay Servicing, LLC, as follows:

    E.    For actual damages as to each of Counts Four and Five;

    F.    For statutory damages of up to Two Thousand Dollars ($2,000.00) for each such RESPA violation as to Count Five;

    G.    For attorneys' fees and costs as to Counts Four and Five;

    H.    Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ Javier L. Merino
Javier L. Merino
Dann Law
372 Kinderkamack Road, Suite 5
Westwood, New Jersey 07675
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Edun Mohamed*

## JURY DEMAND

Mohamed hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
Dann Law
*Counsel for Plaintiff Edun Mohamed*