UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

EDUN MOHAMED,

                    Plaintiff,          **MEMORANDUM & ORDER**
                                           20-CV-0216(EK)(LB)

                -against-

NATIONSTAR MORTGAGE, LLC dba MR.
COOPER and FAY SERVICING, LLC,

                   Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

        Plaintiff Edun Mohamed brought this lawsuit against
two loan-servicing entities: Nationstar Mortgage, LLC and Fay
Servicing, LLC.  Mohamed's claims arise from the alleged
mishandling of his loan modification.  He alleges that
Nationstar agreed to modify his home-mortgage loan but then
refused to honor that commitment despite Mohamed's having
performed his obligations.  He goes on to allege that after
Nationstar assigned the loan to Fay for servicing, Fay, too,
failed to honor the modification.

        Based on these events, Mohamed sued both servicers
under the Real Estate Settlement Procedures Act (RESPA),
12 U.S.C. §§ 2601-2617, alleging that they failed to correct, or
even to conduct a reasonable investigation into, these errors.
Second Amended Complaint ("SAC") ¶¶ 65-80, 100-115, ECF No. 36.
He also sued Nationstar for breach of contract, SAC ¶¶ 81-90,

and both servicers for violating Section 349 of the New York General Business Law ("GBL").  SAC ¶¶ 91-99, 116-124.

For the reasons set forth below, Mohamed's claims against Fay are dismissed, as is his GBL claim against Nationstar.  Mohamed's RESPA and breach-of-contract claims against Nationstar, however, will proceed.

## I.  Background

The facts summarized here are derived from the Second Amended Complaint ("SAC"), as well as loan modification documents "integral" to the Complaint.  *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).  The facts are construed in the light most favorable to the plaintiff, the non-moving party.  Mohamed's home in Jamaica, New York is encumbered by a Federal Housing Administration-insured mortgage loan.  SAC ¶¶ 2-5.  Nationstar serviced this loan until approximately November 1, 2017; at that point, Fay took over as servicer (a role it continued in until June 19, 2018).  SAC ¶¶ 6-7.

In 2016, Nationstar filed a foreclosure action against Mohamed in Queens County Supreme Court.  *Id.* ¶ 45. In February 2017, Mohamed applied to Nationstar for a loan modification and was approved for a trial period plan ("TPP").  SAC ¶¶ 21-22. The TPP indicated that Mohamed could "accept the trial plan" by (1) returning the signed document by a certain date and (2) making three timely payments of $1,507.02 each "by the end of"

March, April, and May 2017, respectively. *Id.* ¶¶ 23–24.  If that was done, Nationstar advised, "we will send you the final modification agreement which is required to be signed and returned to Nationstar." *Id.* ¶ 25.  And, Nationstar indicated, "we will also sign this modification agreement and your account will be permanently modified in accordance with the terms of the modification agreement." *Id.*

Mohamed claims that he timely returned the signed TPP and made the three payments as instructed. *Id.* ¶ 26.  A few days after the last payment due date, Nationstar sent Mohamed the final loan modification agreement for him to sign and return, which he did. *Id.* ¶¶ 27–28.  Along the way, in June 2017, the Queens foreclosure action between Nationstar and Mohamed was marked "settled." *Id.* ¶ 46.  Nationstar's attorneys advised the Special Referee that a permanent loan modification was forthcoming. *Id.*

But Mohamed never received the countersigned version of the final modification agreement. *See id.* ¶ 30.  Instead, months later, Nationstar sent him a letter advising that he was approved for a *different* TPP that required monthly payments of $1,654.70 per month, over $150 per month higher than what he would have had to pay under the final loan modification agreement. *Id.*  Subsequently, on October 19, 2017, Nationstar sent Mohamed another letter indicating that he his request for a

loan modification had been denied "for one of the following reasons . . . after being offered a Trial Period Plan or Modification Agreement you either did not make the 1st payment in your trial plan, or did not return the final modification agreement timely, or after initially asking to be considered for a modification you withdrew that request." *Id.* ¶ 31.  Mohamed contends that none of these reasons was true as to him.

Fay began servicing the loan soon thereafter, on November 1.  *Id.* ¶ 7.  Later that month, Mohamed sent Notices of Error ("NOEs") through counsel to Nationstar and Fay.  *Id.* ¶¶ 33-44.  The NOE to Nationstar asserted, among other things, that the servicer had failed to accept and apply Mohamed's payments in accordance with the terms of the TPP.  Notice of Error to Nationstar 2-3, Ex. 7 to SAC, ECF No. 36-7.[1]  The NOE sent to Fay claimed that it, in turn, had failed to obtain all relevant loan documents from Nationstar, including the final loan modification agreement, as required by RESPA.  Notice of Error to Fay 2-3, Ex. 9 to SAC, ECF No. 36-9.  As a result, Mohamed's notice asserted, Fay was failing to honor that agreement.  *Id.*.

---

[1] Page numbers in citations to record documents (except deposition transcripts) refer to ECF pagination rather than the documents' native page numbers.

Nationstar responded on November 30, 2017, stating that the first TPP "was created in error and was closed on August 10, 2017" — *after* Mohamed alleges he returned the modification agreement and made the three payments.  SAC ¶¶ 37–38.  Nationstar also advised (confusingly) that "[d]uring our investigation, we were unable to identify the error in creating a Trial Period Plan in error, and correct it [sic] on August 10, 2017."  *Id.*  On January 15, 2018, Fay responded as well, stating that it had been advised by Nationstar that the "[Home Affordable Modification Program] FHA [loan modification] was denied as Mr. Mohamed did not accept the offer."  *Id.* ¶ 44.

On July 26, 2018, the state Supreme Court granted Nationstar's unopposed motion to restore the foreclosure proceeding against Mohamed's home to the court's active calendar.  *Id.* ¶¶ 47–49; Supreme Court Order, Ex. 13 to SAC, ECF No. 36–13.  Mohamed alleges that after the foreclosure case resumed active status, he incurred attorney's fees in "attending settlement and status conferences."  *Id.* ¶¶ 50.  He does not, however, allege that the house was actually foreclosed upon.  Subsequently, on June 19, 2019, a nonparty to this action — Carrington Mortgage Services, LLC — took over the loan servicing role from Fay.  SAC ¶ 52.

Mohamed then filed this suit.  Compl., ECF No. 1.  He alleges violations of RESPA and Section 349 of the GBL against

both Nationstar and Fay.  SAC ¶¶ 65-80, 91-124.  Against

Nationstar, Mohamed also brings a claim for breach of contract.

*Id.* ¶¶ 81-90.  Nationstar and Fay have moved to dismiss all of

Mohamed's claims.

## II.  Legal Standard

On a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), "the court's task is to assess the legal

feasibility of the complaint." *Lynch v. City of New York*, 952

F.3d 67, 75 (2d Cir. 2020).[2]  In doing so, the Court "must take

the facts alleged in the complaint as true, drawing all

reasonable inferences in [the plaintiff's] favor." *In re NYSE

Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).  To

survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to "state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  Courts "are not bound to accept as true a

legal conclusion couched as a factual allegation," and

"[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

### III.  Discussion

**A.   Mohamed Adequately Alleges RESPA Claims Against Nationstar, but not Fay**

RESPA "regulates the real estate settlement process, including loan servicing and assignments." *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 382 (2d Cir. 2022).  Among other things, the statute "govern[s] the way in which federal mortgage loan servicers responded to . . . assertions of error from borrowers." *Id.*  RESPA's implementing regulations include Regulation X, codified at 12 C.F.R. §§ 1024.1 through 1024.41.[3] "Section 1024.35 of Regulation X allows borrowers to notify mortgage servicers of possible account errors.  Loan servicers, then, are required to respond to any written notice from the borrower" that satisfies certain criteria.  *Naimoli*, 22 F.4th at 381.

But "the obligation to respond . . . applies only to the covered errors listed in § 1024.35(b).  This subsection enumerates ten specific covered errors, and then includes an eleventh catch-all provision, which encompasses any other error relating to the servicing of a borrower's mortgage loan."  *Id.* at 382.  Thus, to overcome the motion to dismiss, Mohamed must not only succeed on his contention that RESPA provides a private

---

[3] *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act ("Regulation X"), 78 Fed. Reg. 10,696, 10,696 (Feb. 14, 2013).

cause of action; he must go on to establish that one or more of the errors he alleges is a "covered error" under the implementing regulation.

1.  RESPA Provides a Private Cause of Action for a
    Violation of 12 C.F.R. § 1024.35

Nationstar and Fay argue that RESPA does not create a private right of action for a violation of Section 1024.35. This argument is foreclosed by a plain reading of the applicable statute and regulation, and by a recent Second Circuit decision.

The Second Circuit has not *explicitly* held that RESPA provides a private cause of action for a servicer's failure to respond adequately to a claimed violation of Section 1024.35. However, the issue is controlled by the Court of Appeals' decision in *Naimoli,* 22 F.4th at 382.  There, the district court granted summary judgment against the plaintiff on her claim that her loan servicer had failed adequately to respond to a claimed Section 1024.35 violation.  *Id.* at 385–86.  The plaintiff appealed from the judgment on only that claim.  *Id.* at 385.  At issue was whether the error alleged by the plaintiff was a "covered error" under Section 1024.35(b).  *Id.* at 379.  The Second Circuit held that, under the facts of that case, it was. *Id.* at 385–86.  The panel therefore reversed the district court and remanded the case.  *Id.* at 386.  Thus, the opinion

necessarily presupposes that a private right of action is available for Section 1024.35 claims.

This conclusion is also consistent with the only other circuit to have addressed the issue. *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016) ("If the servicer fails to respond adequately to the borrower's notice of error, then the borrower has a private right of action to sue the servicer under RESPA."). The same regulation at issue here — 12 C.F.R. § 1024.35 — was at issue in *Lage* as well. 839 F.3d at 1007.[4]

The same conclusion would obtain even if *Naimoli* were somehow distinguishable. The relevant RESPA provision, 12 U.S.C. § 2605, supports the existence of a private right of action for violations of the regulation at issue. Subsection (f) of the statute provides that anyone who "fails to comply with any provision of this section shall be liable to the borrower for each such failure" for actual and statutory damages. *Id.* § 2605(f). In turn, subsection (k)(1)(C)

---

[4] The district court in *Sutton v. CitiMortgage, Inc.*, 228 F.Supp.3d 254, 270-71 (S.D.N.Y. 2017), discussed the "split among courts" as to whether a private right of action exists for violations of Section 1024.35. That court went on to assume and that such a right does exist. *Id.* at 271. *Sutton*'s assumption was expressly predicated on "the provision of a private right of action in 12 U.S.C. § 2605(k)(1)(E) (through § 2605(f))," among other things. *Id.* The Fifth and Ninth Circuits have declined to directly address whether Section 1024.35 provides a private right of action. *See Gresham v. Wells Fargo Bank, N.A.,* 642 F. App'x 355, 359 n.16 (5th Cir. 2016); *Nelson v. PHH Mortg. Corp.*, No. 23-15069, 2024 WL 810440, at *1 (9th Cir. Feb. 27, 2024).

prohibits any "servicer of a federally related mortgage" from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." *Id.* § 2605(k)(1)(C).  And a catch-all provision in subsection (k)(1)(E) prohibits "fail[ing] to comply with any other obligation found by the [] Consumer Financial Protection [Bureau], *by regulation*, to be appropriate to carry out the consumer protection purposes of this chapter." *Id.* § 2605(k)(1)(E) (emphasis added).

It was under the authority of Section 2605 that the Consumer Financial Protection Bureau promulgated Regulation X, including Section 1024.35. *See, e.g.*, 78 Fed. Reg. at 10,727 ("Section 1024.35 implements section 6(k)(1)(C) of RESPA [*i.e.*, 12 U.S.C. § 2605(k)(1)(C)] . . . ."); *see also, e.g.*, *Ramirez v. Wells Fargo Bank, N.A.*, 2021 WL 9564023, at *5 (E.D.N.Y. Mar. 24, 2021) ("Because 12 C.F.R. § 1024.35 was promulgated pursuant to section 6 of RESPA, I reject Defendants' argument that there is no private right of action thereunder."); *Lucas v. New Penn Fin., LLC*, No. 17-CV-11472, 2019 WL 404033, at *4 (D. Mass. Jan. 31, 2019) (concluding that Section 2605(f) provides a private cause of action for a violation of Section 1024.35 in part because the CFPB "promulgated 12 C.F.R. § 1024.35 under 12

U.S.C. § 2605(k)(1)(E) and (j)(3)").  The defendants do not
contend that the regulation at issue here exceeds the scope of
Congress's delegated authority.

Thus, a violation of Section 1024.35 is, at the least,
a "fail[ure] to comply" with an "obligation" imposed by the CFPB
under Section 2605(k)(1)(E) and, depending on the nature of the
violation, may also be a violation of the specific provisions of
Section 2605(k)(1)(C).  Accordingly, Section 2605(f) provides a
private right of action for allegations of the instant variety.

In arguing the contrary conclusion, the defendants
rely primarily on *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-CV-
7500, 2015 WL 585589 (S.D.N.Y. Feb. 11, 2015).  The court held
in that case that there was no private right of action under
Section 1024.35 because that section "includes the remedies
available, and because a private right of action for alleged
damages is not among them."  *Id.* at *11.  But the "remedies"
contemplated in *Miller* are premised on subsection (*i*)(2),
entitled "Effect on *servicer* remedies — Remedies permitted."
(Emphasis added.)  As the title indicates, that subsection
describes remedies available to servicers, not to aggrieved
borrowers.  It states:

> Except as set forth in this section with respect to an
> assertion of error under paragraph (b)(9) or (10) of
> this section, nothing in this section shall limit or
> restrict a lender or servicer from pursuing any remedy

it has under applicable law, including initiating
foreclosure or proceeding with a foreclosure sale.

12 C.F.R. § 1024.35(*i*)(2).  This subsection thus preserves a
servicer's ability to initiate foreclosure or proceed with a
foreclosure sale under other applicable laws, such as state
laws, notwithstanding a borrower's having invoked the error
resolution procedure.  But it says nothing about the borrower's
remedies for a violation of the statute.[5]  And in any event, to
the extent *Miller* is inconsistent with *Naimoli*, this Court is
obligated to follow the Second Circuit's guidance.

> 2.   Mohamed Has Alleged "Covered Errors" Triggering
>      Section 1024.35 for Nationstar, but not for Fay

As noted above, Mohamed alleges that the defendants
failed properly to investigate and correct the alleged errors
Nationstar made in servicing the loan, as required by Section
1024.35.  SAC ¶ 74.  Such errors, however, are actionable only
if they are "covered errors" under 12 C.F.R. § 1024.35(b).  That
subsection lists ten specific errors (such as failing properly
to apply a payment), plus a catch-all provision in Section
1024.35(b)(11), encompassing "[a]ny other error relating to the
servicing of a borrower's mortgage loan."  Because the covered

---

[5] Nor does that subsection, at bottom, really provide any remedies for
the servicer either; rather, it merely makes clear that the provisions of
Section 1024.35 do not preempt remedies available under other laws, such as
state laws.

errors that Mohamed raised differ between Nationstar and Fay, I discuss them in turn.

      a.   Nationstar

      In his NOE to Nationstar, Mohamed alleged that Nationstar committed errors under multiple paragraphs of Section 1024.35(b). Specifically, he alleges that Nationstar:

- Stopped accepting Mohamed's monthly mortgage payments, in violation of Section 1024.35(b)(1);

- Failed to credit his account correctly with payments made in the amount specified by the TPP, in violation of Sections 1024.35(b)(2) and (3);

- Issued incorrect mortgage statements, in violation of Sections 1024.35(b)(6) and (11); and

- Issued a second proposed TPP after the first TPP was already in force, in violation of Sections 1024.35(b)(11).

Notice of Error to Nationstar 2–3.

      These alleged errors all stem from the same fundamental contention: that Mohamed reached a binding agreement with Nationstar to modify the loan, and Nationstar failed to honor that agreement. At this stage, the Court is of course obligated to assume the truth of Mohamed's factual allegations (but not allegations that constitute conclusions of law — such as the allegation that a contract was "formed" or "breached").

As discussed below, Mohamed has plausibly alleged factual content from which a jury could conclude that Nationstar's February 13, 2017 TPP constituted an offer and that he accepted that offer, pursuant to its terms, by signing the loan modification agreement and making the three payments called for.  (Nationstar responds that the New York statute of frauds precludes a finding that a valid contract existed; that argument is also discussed — and rejected — below.)

Taking the existence of a binding modification agreement as a given at this stage, Mohamed has plausibly alleged that Nationstar committed several covered errors, including those described in Subsection (b)(1) (failure to accept payment) and Subsection (b)(3) (failure to credit a payment to the borrower's loan account as of the date of receipt).

The Second Circuit's decision in *Naimoli* suggests that the alleged breach may also constitute covered error under the catch-all provision of Section 1024.35(b)(11).  That clause encompasses "[a]ny other error relating to the servicing of a borrower's mortgage loan."  In *Naimoli*, the Court of Appeals observed that "[b]oth 'any' and 'relating to' are capacious terms."  22 F.4th at 383.  Accordingly, the panel concluded, "any error that has some connection with or pertains to loan servicing is covered (except of course where the regulation

specifically excludes an error)." *Id.* at 383–84.  Combining
that reading with the regulatory definition of "servicing," the
court concluded that "an error is covered by the catch-all
provision if it relates to or is connected with either (a) the
loan servicer's receipt of payments from borrowers or (b) the
loan servicer's making of payments to the loan's owners or third
parties." *Id.* at 384.

      The *Naimoli* panel held that "the text of the catch-all
provision of Regulation X, which includes the terms 'any other
errors' and 'relating to,' is sufficiently expansive to cover
the errors [plaintiff] asserts," based on her allegation that
the servicer had lost and failed to record certain documents
that it was supposed to have recorded. *Id.* at 379–81.  These
errors were "relate[d] to loan servicing" under Regulation X
because, *inter alia*, the servicer's "loss of the loan documents
made [the plaintiff] ineligible for the loan modification and
new interest rate." *Id.* at 384.  Here, as with *Naimoli*,
Nationstar's actions precluded Mohamed from receiving the loan
modification and its lower monthly payment.  Nationstar's
actions are thus plausibly related to its receipt of payments
from Mohamed, which is a covered error under 12 C.F.R.
§ 1024.35(b)(11).[6]

---

[6] "[T]he narrow exception to the catch-all provision, which excludes
challenges to the merits of a servicer's loss mitigation determination, does

In rebuttal, Nationstar primarily relies on *Sutton v. CitiMortgage, Inc.*, which held that "errors in evaluation of loss mitigation operations are not subsumed by this catch-all provision [of Section 1024.35]" and, therefore, a servicer's decision to grant a particular loan modification (or refuse to grant a different one) is not a covered error. 228 F. Supp. 3d 254, 272-73 (S.D.N.Y. 2017). But that case is inapposite because the defendant "was *servicing properly* the very loan modification to which Plaintiff had knowingly and voluntarily agreed." *Id.* at 274 (emphasis added). Here, on the other hand, Nationstar is plausibly alleged to have refused to service that loan modification and, in fact, asserted that no such modification was ever effectuated.

    b.   Fay

Mohamed's allegations against Fay are of a different cast. In the NOE he sent to Fay, Mohamed claimed only that Fay had failed to "obtain **ALL** of the prior servicer's documents, including the modification documents that you have not received," thus violating 12 C.F.R. § 1024.38(b)(4)(ii) and,

---

not apply" here because, as with the servicer in *Naimoli*, Nationstar had already made the determination that Mohamed was eligible for a loan modification. *Id.* at 384-85. Mohamed merely asked that Nationstar honor the determination that it had already made. Thus, the failure to honor the agreement was an error that was "correctable without overturning [Nationstar's] determination regarding [Mohamed's] loss mitigation application" — indeed, Mohamed was explicitly asking for Nationstar to adhere to that determination.

therefore, the catch-all provision in 12 C.F.R.
§ 1024.35(b)(11).  Notice of Error to Fay at 2.  Section
1024.38(b)(4)(ii) requires that a servicer "maintain policies
and procedures that are reasonably designed to" "ensure that the
servicer can: As a transferee servicer, identify necessary
documents or information that may not have been transferred by a
transferor servicer and obtain such documents from the
transferor servicer."  12 C.F.R. §§ 1024.38(a), (b)(4)(ii).

Mohamed's claim against Fay fails because a violation
of Section 1024.38 is not a covered error.  Regulation X itself
explains that "borrowers do not . . . have a private right of
action under the [CFPB's] rules to enforce the requirements set
forth in § 1024.38."  Regulation X, 78 Fed. Reg. at 10,817–18
(cited by *Sutton*, 228 F. Supp. 3d at 273).  And district courts
around the country have confirmed this conclusion.  *See, e.g.*,
*Ramirez,* 2021 WL 9564023, at *6 ("[T]here is no private right of
action for enforcement of 12 C.F.R. § 1024.38."); *Joussett v.
Bank of Am., N.A.,* No. 15-CV-6318, 2016 WL 5848845, at *5 (E.D.
Pa. Oct. 6, 2016) ("The CFPB explicitly crafted [Section
1024.38] not to provide for private enforcement."); *Smith v.
Nationstar Mortg.,* No. 15-13019, 2015 WL 7180473, at *4 (E.D.
Mich. Nov. 16, 2015) (there is no private right of action to

enforce Section 1024.38 because that section was not promulgated under 12 U.S.C. § 2605).[7]

### 3. Mohamed Has Adequately Alleged Actual Damages Against Nationstar

Finally, to sustain his claim against Nationstar, Mohamed must adequately plead damages.

> To assert a claim under RESPA, a plaintiff must sufficiently allege one of two types of damages: (1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605.

*Jackson v. Caliber Home Loans*, No. 18-CV-4282, 2019 WL 3426240, at *7 (E.D.N.Y. July 30, 2019).  Actual damages must be "proximately caused by the defendant's violation of RESPA."  *Id.*

Among other things, Mohamed has alleged the cost of defending against foreclosure (nearly $7,000) as damages.  SAC ¶ 56.  Nationstar argues that the costs of litigating the foreclosure suit "were not proximately caused by Nationstar's response to the notice of error."  Nationstar's Renewed Mot. to Dismiss 3, ECF No. 38.  In particular, it argues that "to the extent that the resumption of the foreclosure case was proximately caused by any action taken by Nationstar, it would have been caused by the denial of the loan modification and not

---

[7] Even if a violation of Section 1024.38 was a covered error, Mohamed has not made sufficient allegations about Fay's "policies and procedures" to survive a motion to dismiss.  *See Mastin v. Ditech Fin., LLC*, No. 3:17-CV-368, 2018 WL 524871, at *6 (E.D. Va. Jan. 23, 2018).

by Nationstar's response to the notice of error." *Id.*  But as discussed above, Nationstar is not alleged to have denied a loan modification.  Instead, the allegation is that it refused to recognize a loan modification it had already entered into.

And Mohamed adequately alleged that the expenses he incurred in defending the foreclosure action were proximately caused by Nationstar's mishandling of his loan modification.  In the SAC, he alleges that during a June 2017 settlement conference, Nationstar's attorneys advised the state court "that a permanent loan modification was forthcoming that should resolve the foreclosure action," and the matter was therefore marked as settled.  SAC ¶ 46.  But in June 2018, Nationstar asked the court to restore the matter because, in its words, "[s]ubsequent to the [June 2017] settlement conference, an error was discovered with the loan modification documents that prevented a permanent modification from being booked."  Affirmation in Supp. of Mot. to Restore ¶ 6, Ex. 12 to SAC, ECF No. 36-12.  Mohamed then alleges that he incurred attorney's fees in connection with court appearances in the foreclosure case between September 2018 and March 2019.  SAC ¶ 50.  Thus, Mohamed has made specific "factual allegation[s] suggesting that [the] damages [he] suffered were proximately caused by [Nationstar's] violations of § 2605."  *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 539 (E.D.N.Y. 2015).

**B.   Nationstar's Statute of Frauds Defense Does Not Prevail at This Stage**

As discussed, Mohamed brings a breach-of-contract claim against Nationstar.  He claims that the final loan modification that he signed with Nationstar is a valid, binding contract.  Nationstar argues that the contract is unenforceable under the New York Statute of Frauds because Mohamed has not produced a copy of the final loan modification agreement signed by Nationstar.  Nationstar's Mem. of Law in Supp. of Def. Nationstar's Mot. to Dismiss ("Nationstar Mem.") 14, ECF No. 28.

"To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).  A loan modification must satisfy the applicable Statute of Frauds — as codified, in this case, at Section 5-703(1) of New York's General Obligations Law.  To comply with the statute, the loan modification must be evidenced by a writing that identifies the parties, describes the subject matter, is signed by the party to be charged, and states all essential terms of the agreement.  S*ee Cohen v. Holder,* 204 A.D.3d 973, 975 (2d Dep't 2022).  New York does not require the proffered writing to be made contemporaneously with the agreement.  *See Weitnauer Trading Co. v. Annis*, 516 F.2d 878, 880 (2d Cir. 1975).

The New York Statute of Frauds is an affirmative defense.  *See Reich v. Knopf*, 65 A.D.2d 618, 619 (2d Dep't 1978).  Still, it is appropriate in certain circumstances to take up the Statute of Frauds on a Motion to Dismiss.  *See, e.g.*, *Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 471 (S.D.N.Y. 2016).

The TPP is cognizable on Nationstar's motion to dismiss because it is "integral" to the Complaint.  *Chambers*, 282 F.3d at 153.  Here, the TPP satisfies the Statute of Frauds at the Motion to Dismiss stage.

1.  The TPP Identifies the Parties and Subject Matter of the Agreement

The TPP clearly identifies the parties to the modification agreement as Mohamed and Nationstar.  Nationstar Letter dated February 13, 2017 (the "TPP"), at 2-4, Ex. 2 to SAC, ECF No. 36-2.[8]  The subject matter of the agreement is clearly identifiable: it is a contract to modify Mohamed's mortgage payment terms pursuant to the FHA HAMP program.  *Id.* at 2.

2.  The TPP Meets the Requirement of a Signed Writing

Nationstar's letter dated February 13, 2017, in which it proposed the TPP, satisfies the requirement of a signed

_____

[8] Nationstar was Mohamed's mortgage servicer.  The owner of the mortgage, the Federal Housing Administration, is not a party to this action.  SAC ¶¶ 4, 6.

writing.  The document was signed by "Nationstar Mortgage LLC, Loss Mitigation Department."  TPP 4.  *See* 10 *Williston on Contracts* § 29:36 (4th ed.) (for purposes of satisfying the Statute of Frauds, "'[s]igned' includes using any symbol executed or adopted with present intention to adopt or accept a writing," and "the signature may be made in pencil, Facsimile, or rubber stamp; by typewriter; or by teletype; or telegram; or e-mail").  Nationstar is, of course, the party to be charged with a breach of the TPP agreement.

Nationstar claims that its failure to return the countersigned final loan modification agreement means that the agreement is not enforceable for lack of a signed writing by Nationstar.  Nationstar Mem. 14-15 (Mohamed "admits that he does not possess a copy of the [final] modification") (citing SAC ¶ 28 n.1).  This argument fails because, as discussed above, Mohamed has alleged the existence of — and actually produced — the requisite signed writing in the form of the TPP.  This is sufficient at this stage.  Even where a signed writing has not been produced, a motion to dismiss may be denied because "a memorandum or writing sufficient to satisfy the Statute of Frauds may be within the defendant's possession," or the "defendant might admit the existence of the contract."  *Posner v. Marcus & Millichap Corp. Real Est. Serv.*, 180 F. Supp. 2d 529, 531 (S.D.N.Y. 2002).

Once again, Nationstar relies primarily on *Miller,* an unpublished district court case, to argue the contrary point. *See* Nationstar Mem. 14-15 (citing *Miller,* 2015 WL 585589 at *3). Yet, *Miller* is distinguishable because, in that case, the plaintiff failed not only to provide a written agreement, but indeed to allege any valid agreement — written or otherwise. *See Miller,* 2015 WL 585589 at *4 (plaintiff "failed to sufficiently allege the existence of an agreement to modify her loan"); *see also id.* ("Miller, in her opposition, fails even to identify a contract to serve as the foundation for her breach of contract claim . . . .").

The SAC (via the TPP) thus plausibly satisfies the requirements of a writing signed by the party to be charged.

3.   The TPP Identifies the Essential Terms of the Loan
      Modification Agreement

The essential terms of a contract are "those terms customarily encountered in transactions of this nature." *Nesbitt v. Penalver*, 40 A.D.3d 596, 598 (2d Dep't 2007). "Only reasonable certainty, not absolute certainty, as to the terms of the agreement is required." *O'Hanlon v. Renwick*, 166 A.D.3d 890, 892 (2d Dep't 2018).

Here, the TPP listed the key terms of the loan modification agreement: it required Mohammed to "return the executed trial plan by" March 1 and to make "each of the monthly

Trial Period Plan payments by the due dates." TPP at 3. The
TPP stated the amounts that Mohamed had to pay and the dates by
which those payments were due. *Id.* at 2. In return, Nationstar
agreed that, upon Mohamed's satisfaction of his obligations, it
would "stop the foreclosure process" and "send you the final
modification agreement." *Id.* at 3. After Mohamed signed that
document, Nationstar agreed to "also sign this [final]
modification agreement," upon which event Mohamed's "account
will be permanently modified." *Id.*

On this record, a jury could conclude that the TPP did
not just evidence the agreement: it *constituted* a binding
agreement (albeit subject to conditions precedent). As noted
above, the TPP refers to itself multiple times as "this letter
agreement." *Id.* at 1, 4. It also describes itself as "this
offer," *e.g.*, *id.* at 2, and tells Mohamed that by "signing
below" on the signature blocks, he would "accept" the TPP.
Indeed, the Fourth Circuit reached a similar conclusion in
analyzing a comparable TPP. Applying Virginia law, the court
held the TPP to constitute an offer to contract. *Neil v. Wells
Fargo Bank, N.A.*, 596 F. App'x 194, 196 (4th Cir. 2014).

The SAC, through the TPP, therefore plausibly
satisfies not only the Statute of Frauds' technical
requirements, but also its purpose, which "is to avoid fraud by
preventing the enforcement of contracts that were never in fact

made." *Henry L. Fox Co. v. William Kaufman Org., Ltd.*, 542
N.E.2d 1082, 1084 (N.Y. 1989); *cf. Charlay v. Northeast Sav.*,
178 A.D.2d 859, 860 (1st Dep't 1991) (Statute of Frauds applied
where plaintiff produced "no writing subscribed by defendant
embodying, expressly or by reasonable implication, an agreement
on defendant's part to remove" a condition from the mortgage).
Thus, Nationstar's invocation of the Statute of Frauds does not
compel dismissal.

**C.   Mohamed Has Not Alleged "Consumer-Oriented Behavior," as
       Required for His GBL § 349 Claim**

        Finally, Mohamed brings Section 349 claims against
both Nationstar and Fay.  He avers that Nationstar's failure to
honor the binding loan modification contract constituted an
unlawful deceptive act or practice under the GBL.  SAC ¶ 94.
And he argues that Fay violated by the GBL by refusing to
correct the error instigated by Nationstar and by continuing to
prosecute the foreclosure action in state court in spite of the
error.  *Id.* ¶ 119.  Mohamed alleges that both defendants'
actions "ha[ve] a broader impact on consumers at large or
similarly situated consumers."  *Id.* ¶¶ 97, 122.

        Section 349 prohibits "[d]eceptive acts or practices
in the conduct of any business, trade or commerce or in the
furnishing of any service."  N.Y. Gen. Bus. Law § 349(a).  A
deceptive act or practice is one "likely to mislead a reasonable

consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). To state a claim under Section 349, a plaintiff must allege that (1) the defendant engaged in consumer-oriented conduct; (2) the conduct was misleading in a material way; and (3) the plaintiff was injured as a result of the allegedly deceptive act or practice. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). "Under this provision, the gravamen of the complaint must be consumer injury or harm to the public interest. The critical question is whether the acts or practices have a broad impact on consumers at large." *Kilgore*, 89 F. Supp. 3d at 535.

Importantly, "private contract disputes, unique to the parties, . . . do not fall within the ambit of Section 349." *Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335, 2014 WL 2048384, at *11 (E.D.N.Y. May 19, 2014); *accord O.K. Petroleum v. Travelers Indem. Co.*, No. 09-CV-10273, 2010 WL 2813804, at *5 (S.D.N.Y. July 15, 2010) (to survive a motion to dismiss, plaintiffs "were required to plead facts showing that the deceptive conduct went beyond the contractual dispute between these parties"). This proposition is consonant with the principle that "General Business Law § 349 was not intended to turn a simple breach of contract into a tort [or] to supplant an action to recover damages for breach of contract between parties to an arm's

length contract." *Graham v. Eagle Distrib. Co.*, 637 N.Y.S.2d 583, 583 (4th Dep't 1996).

Mohamed's GBL claims fail for precisely this reason. His dispute with the servicers arises from Nationstar's alleged breach of the contract and from Fay's failure to recognize that contract as valid.  And "[a]lthough [Mohamed] speculates that other consumers were treated similarly to him, he does not allege any facts to support that assertion."  *Yanes v. Ocwen Loan Servicing, LLC*, No. 13-CV-2343, 2015 WL 631962, at *5 (E.D.N.Y. Feb. 12, 2015).

Here, Mohamed has made only the most conclusory (and speculative) allegations about the "broader impact" that the defendants' actions would have on other consumers.  SAC ¶¶ 97, 122.  Such allegations are insufficient.  *See, e.g. Kilgore*, 89 F. Supp. 3d at 536 (dismissing a Section 349 claim where the plaintiff alleged that the defendant servicer's misrepresentations about its loan modification were "directed to hundreds of thousands of consumer-homeowners whose loans have been serviced by defendant," but plaintiff did not specify "how those alleged misrepresentations were made to the public at large"); *Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335, 2014 WL 2048384, at *11 (E.D.N.Y. May 19, 2014) (dismissing Section 349 claim where the plaintiff conclusorily alleged that "the unfair and deceptive trade acts and practices of Defendants have

directly, foreseeably, and proximately caused damages and injury to Plaintiffs and consumers at large"); *Miller*, 2015 WL 585589, at *8 ("Where a plaintiff makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed."); *Yanes*, 2015 WL 631962, at *5 (dismissing a Section 349 claim because the plaintiff failed to "allege any facts" to support his assertion that "other consumers were treated similarly to him").

Thus, Mohamed's GBL claims must be dismissed.

### IV.   Conclusion

For these reasons, Nationstar's motion to dismiss is granted as to Mohamed's GBL claim but denied as to his RESPA and breach-of-contract claims.  Fay's motion to dismiss is granted in its entirety.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:     September 10, 2024
           Brooklyn, New York